IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 DEC 16  PM 4:46

NATHAN GLANVILLE,
                Plaintiff,

-vs-                                                  Case No. A-13-CA-519-SS

CORRECTIONS CORPORATION OF AMERICA; SUSAN M. MORRIS, M.D.; SAMUEL L. KOVALSKI, P.A.; ANNA J. WALKER, W.H.N.P.; DEBRA M. WALLACE, R.N.; REBECCA L. McGOWAN, R.N.; KIM M. JONES, L.V.N.; JASON P. BAKER, L.V.N.; and NICOLE G. PITTS, L.V.N.,
                Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Nicole Pitts's Motion to Dismiss [#32][1], and Defendant Nicole Pitts's Amended Motion to Dismiss [#33]; and Plaintiff Nathan Glanville's Unopposed Motion for Leave to File Second Amended Complaint [#35][2]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This suit arises from claims by Plaintiff Nathan Glanville against individual medical providers and correctional officers who allegedly ignored Glanville's symptoms of an aneurysm he

---

[1] This motion is DISMISSED AS MOOT.

[2] This motion is GRANTED, and while the Second Amended Complaint has not yet been officially docketed as of the signing of this Order, the Court treats it as the "live" complaint for the purposes of this Order.

suffered in July 2011 while he was housed at the Bartlett State Jail. Consequently, Glanville asserts, he suffered significant brain damage leaving him permanently disabled and unable to work.

In his Original Complaint, Glanville brought a number of claims against various parties. First, he brought federal causes of action under 42 U.S.C. § 1983 against the individual defendants for deliberate indifference to his medical needs. Also, Glanville sued the Corrections Corporation of America (CCA) under § 1983 because the prison guards were employees of CCA. Second, Glanville brought state law medical malpractice and negligence claims against all of the individual defendants. Glanville asserted these same claims against CCA under a theory of *respondeat superior*.

The individual defendants moved to dismiss the case against them under Section 101.106(f) of the Texas Civil Practices and Remedies Code (the Texas Tort Claims Act), which provides:

> if a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f). The individuals were employees of the University of Texas Medical Branch (UTMB)—a state agency. Following Section 101.106(f)'s instructions, Glanville filed an amended complaint asserting the medical malpractice claims against UTMB. Glanville also contended Section 101.106 and the election of remedies requirement violates the Open Court Provision of the Texas Constitution.

In response to the amended complaint, UTMB filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and invoked Eleventh Amendment sovereign immunity. The Court granted the motion and dismissed UTMB as a defendant. *See* Order of Dec. 2, 2013 [#34].

On November 26, 2013, Defendant Nicole Pitts filed a Motion to Dismiss [#32], and then an Amended Motion to Dismiss a day later [#33]. To date, Glanville has not filed a Response, but he has filed an Unopposed Motion for Leave to File Second Amended Complaint, which the Court GRANTS. As far as it relates to the instant motion to dismiss, the Second Amended Complaint adds one paragraph with more facts concerning the behavior of Pitts. *See* Unopposed Motion for Leave to File Second Amended Complaint [#35-1], Ex. A (Second Amended Complaint), at ¶ 38. The Court has considered the Second Amended Complaint as the "live" complaint for the purposes of Pitts's Amended Motion to Dismiss, and notes the Court's decision would have been the same under both the First and Second Amended Complaints.

## Analysis

### I.     Rule 12(b)(6)—Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will

be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Application

Glanville brings a claim against Pitts under 42 U.S.C. § 1983 for deliberate indifference to Glanville's medical needs. "To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc). "'State employment is generally sufficient to render the defendant a state actor,'" and a defendant necessarily "acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n.18 (1982)).

"'Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.'" *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)). To show subjective deliberate indifference, Glanville must show: (1) Pitts had subjective knowledge of "facts from which an inference of substantial risk of serious harm could be drawn," (2) Pitts drew that inference, and (3) Pitts's response to the risk indicates she subjectively intended the harm to occur. *Id.* (citing *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458–59 (5th Cir. 2001).

The only factual allegations against Pitts are contained in two paragraphs of Glanville's Second Amended Complaint. First, Glanville alleges:

> On July 27, at 11:50 a.m., Mr. Glanville fainted <u>again</u>. He saw Nurse Pitts, who noted he was lethargic, confused, and that he had notable alteration of mental status. He also could not eat due to loss of appetite. He walked with a slow gait and had trouble sitting up due to weakness. Nurse Pitts consulted with Mr. Kovalski, who ordered an oxygen saturation test, and told the nurse to wait for further orders. Still, no referral to a specialist. Still, no work up.

2d Am. Compl. [#35-1], at ¶ 34.

According to Glanville, after Mr. Kovalski consulted with Dr. Morris, Dr. Morris ordered a search of Glanville's cell and property. The search turned up no contraband, and the results were reported to Nurse McGowan and Mr. Kovalski around 4:19 p.m. on July 27. Later this same day, Glanville fainted, suffered an aneurysm, and was taken to the hospital at UTMB Galveston where he was admitted at 12:15 a.m. on July 28. On the morning of July 29, Glanville underwent surgery to clip the aneurysm, and he then spent two weeks in the hospital at UTMB before being discharged on August 15 and returned to the Bartlett prison. Here, Glanville makes his second set of allegations concerning Pitts, which appear for the first in the Second Amended Complaint:

> After Mr. Glanville was discharged from UTMB and returned to the Bartlett prison, Nurse Pitts advised him that she had become involved with his care when he had his second seizure, which occurred several days before he was taken to UTMB, although the medical records reflect her involvement only on July 27. Thus, from the time of Mr. Glanville's second seizure onward, Nurse Pitts was also aware of the suffering Mr. Glanville was enduring and his need for treatment and to be referred out of the jail to competent doctors. Despite this, she also failed to do anything to protect Mr. Glanville or get him access to a hospital or competent doctor.

*Id.*, at ¶ 38.

In response to these allegations, Pitts asserts the defense of qualified immunity, and the applicability of qualified immunity is the central issue of the instant motion to dismiss.

### A.   Qualified Immunity

The doctrine of qualified immunity shields government officials performing discretionary functions from liability as well as from suit. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "A defendant entitled to claim qualified immunity is shielded not only from liability but also from 'the costs of trial [and] . . . the burdens of broad-reaching discovery.'" *Gaines v. Davis*, 928 F.2d 705, 706 (5th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). Discovery must not proceed "until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) (citations omitted) (emphasis in original). To meet this heightened pleading standard, the plaintiff must allege particular facts, which, if proven, would demonstrate the defendant violated clearly established statutory or constitutional rights. *Id.* at 995.

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). A plaintiff bears the burden of negating a properly raised qualified

immunity defense. *Id.* The qualified immunity analysis itself involves two considerations: (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal quotation marks and citations omitted). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

As an initial matter, Glanville is asserting the violation of an actual constitutional right. Deliberate indifference to an inmate's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105–07 (1976). Glanville's allegations, however, even if true, do not describe conduct on the part of Pitts amounting to deliberate indifference to Glanville's medical needs.

As described above, deliberate indifference involves only "unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Glanville must allege facts showing (1) Pitts knew of facts giving rise to an inference of a substantial risk of serious harm, (2) she drew this inference, and (3) her response indicates she subjectively intended the harm to occur. The Fifth Circuit has discussed the high standard for deliberate indifference:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional treatment "is a classic example of a matter of medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

*Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Glanville's factual allegations, taken as true, do not meet this "extremely high standard." The first allegation merely indicates Pitts saw Glanville on July 27 after he fainted, and noted he was "lethargic, confused, and that he had notable alteration of mental status." She further observed his lack of appetite, his slow walking, and his trouble sitting up due to weakness. As a nurse, she consulted with Kovalski, who had been previously treating Glanville, and Kovalski ordered her to conduct an oxygen saturation test. He then told Pitts to wait for further orders. These facts simply do not come close to meeting the standard of deliberate indifference described by the case law. Based on Glanville's allegations, Pitts was a nurse who noted his condition and then apparently reported to her superior, Kovalski, who then provided her with her orders, which she followed. This conduct is not an "unnecessary and wanton infliction of pain repugnant to the conscience of mankind."

In his Second Amended Complaint, Glanville adds some factual allegations concerning Pitts. Glanville claims, while the medical records—and Glanville's own previous complaints—indicate Pitts's only involvement with Glanvile was the interaction on July 27, Pitts told Glanville upon his return to Bartlett Prison from UTMB Galveston she had actually "become involved with his care when he had his second seizure" several days before he was taken to UTMB. Therefore, Glanville argues Pitts was aware for several days prior to his eventual transfer to UTMB of Glanville's suffering and his need for treatment, yet she did nothing.

These generalized facts do not meet the heightened pleading standard necessary to demonstrate Pitts violated clearly established constitutional rights and defeat the qualified immunity defense. First, the Court is not entirely sure what "second seizure" Glanville is referring to, although

it suspects he means some of the health problems Glanville was experiencing on July 24. *See* 2d Am. Compl. [#35-1], at ¶¶ 26–29. So it is unclear when Pitts actually became involved in the case based on Glanville's pleadings, which is important to assessing whether Pitts was deliberately indifferent to his medical needs. Moreover, the general assertion Pitts "became involved with his care" does not tell the Court what role Pitts played in Glanville's treatment, which apparently involved a number of medical professionals including, at least, a doctor, a mental health counselor, a physician's assistant, and four other nurses. More importantly, Glanville's general assertion does little to nothing to demonstrate the basic elements of a deliberate indifference claim. "Becoming involved with his care" does not show the Court what facts Pitts knew, whether those facts would give rise to an inference of a substantial risk of serious harm, whether Pitts drew such an inference, what her response was, and whether the response indicates she subjectively intended the harm to occur.

Because Glanville fails to plead facts concerning Pitts sufficient to meet the extremely high standard of a deliberate indifference claim, he fails to show Pitts violated Glanville's clearly established constitutional rights. Consequently, Glanville is unable to rebut Pitts's assertion of qualified immunity, and his claims against her must be dismissed.

## Conclusion

Accordingly,

    IT IS ORDERED that Defendant Nicole Pitts's Motion to Dismiss [#32] is DISMISSED AS MOOT;

    IT IS FURTHER ORDERED that Defendant Nicole Pitts's Amended Motion to Dismiss [#33] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Nathan Glanville's Unopposed Motion for Leave to File Second Amended Complaint [#35] is GRANTED;

IT IS FINALLY ORDERED that Plaintiff Nathan Glanville's claims against Defendant Nicole Pitts are DISMISSED WITHOUT PREJUDICE.

SIGNED this the 16th day of December 2013.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE